NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-1470

YERBOL ALSHINBAYEV,
a/k/a Yerbol Kaundykovich Akshinbayev,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Jason L. Pope
(No. A215-991-751)

Submitted Under Third Circuit L.A.R. 34.1(a)
September 21, 2020

Before: AMBRO, PORTER, and ROTH, Circuit Judges

(Opinion filed: February 17, 2021)

———————

OPINION[*]

———————

AMBRO, <u>Circuit Judge</u>

Yerbol Alshinbayev, a native and citizen of Kazakhstan, came to the United States in 2018 on a B-2 visitor visa and he overstayed. In 2019 he received a notice to appear stating that he was removable under 8 U.S.C. § 1227(a)(1)(B). He filed an application requesting protection under the Convention Against Torture (CAT) and other relief, which the Immigration Judge (IJ) denied. The Board of Immigration Appeals (BIA) adopted and affirmed the IJ's decision, and Alshinbayev petitions us for review. He argues he is eligible for CAT relief because he will be tortured by his former boss and prison guards in Kazakhstan if he is returned and convicted of the crimes with which he was charged there. As substantial evidence supports the IJ and BIA's determination that he is not likely to be tortured in Kazakhstan, we deny his petition for review.

I.      Factual and Procedural Background

Until 2017 Alshinbayev worked as a sales manager and translator at ACCM, a real estate development firm that builds apartment complexes in Nur-Sultan (formerly Astana), Kazakhstan. He accompanied his boss, Yuri Smogulov, on international trips to meet with investors and financial institutions. Alshinbayev even invested $300,000 of his family's money in ACCM's projects. His brother, Yerman, also worked as a driver for

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

and assistant to Smogulov. When hundreds of the apartments under construction were years overdue, Smogulov was arrested and charged with financial fraud. Alshinbayev testified before the IJ that he had at least ten encounters with clients who beat him, shook him, and threatened to burn his car as a result of ACCM's failure to finish the apartments. He also recalled receiving threatening text messages from Smogulov from jail. During this time, the Kazakh Ministry of Internal Affairs subpoenaed him to testify against his boss, which he refused to do unless he received witness protections.

In 2018 Smogulov's wife hired a hitman to have Alshinbayev's brother Yerman killed in what appeared to be an attempt to blame him for ACCM's criminal activities and stop him from testifying against Smogulov. The hitman turned out to be an undercover police officer, and Smogulov's wife was arrested for attempted murder and sentenced to 7 years' imprisonment. Around this time, Smogulov testified that Alshinbayev and Yerman were responsible for the fraud, transforming Alshinbayev from a witness to a suspect. His brother was subsequently arrested, convicted, and sentenced to 6-7 years' imprisonment.

In April 2018 Alshinbayev entered the United States on a nonimmigrant B-2 visitor visa. The following month, he received a two-page report from the police in Kazakhstan, alleging that he committed financial fraud from his position at ACCM. Alshinbayev overstayed his visa and the Department of Homeland Security served him with a Notice to Appear, charging him with removability under 8 U.S.C. § 1227(a)(1)(B). In response, he filed an application requesting asylum, withholding of removal and protection under the CAT. He testified to the IJ that he is innocent and, if returned to

3

Kazakhstan, fears arrest, a corrupt investigation, and torture at the hands of the police. He also testified that he fears rape and retribution by his former boss if he is sent to prison.

The IJ determined that, although the testimony was credible, the harms Alshinbayev suffered in Kazakhstan did not amount to past persecution, he lacked an objective well-founded fear of future persecution, and his past harm and future fear were not on account of his membership in a protected class. The IJ thus denied his claims for asylum and withholding of removal. Further, he found that Alshinbayev was ineligible for protection under the CAT, as he had not shown that it was more likely than not he would be tortured if returned to Kazakhstan or that the government would acquiesce to his torture. The BIA adopted and affirmed the IJ's opinion. Alshinbayev filed a timely petition for review, objecting to the BIA's denial of his application for relief under the CAT.

II.     Discussion[1]

Alshinbayev's claims on review are factual in nature. He does not challenge the IJ and BIA's determination that he did not suffer past torture. Thus we will consider only whether he established a likelihood of future torture. Where, as here, the BIA clearly states that it defers to or adopts the reasoning of the IJ, we generally review both of their decisions. *See Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005). We review the IJ's and BIA's conclusions regarding evidence of past persecution and well-founded fears of

_____

[1] The BIA had jurisdiction to review the IJ's decision under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1).

4

persecution under the "deferential substantial-evidence standard," as they are factual findings. *Sioe Tjen Wong v. Att'y Gen.*, 539 F.3d 225, 230 (3d Cir. 2008). Under this standard, "[t]he BIA's determinations will be upheld if they are supported by reasonable, substantial, and probative evidence in the record considered as a whole." *Kang v. Att'y Gen.*, 611 F.3d 157, 164 (3d Cir. 2010) (citation omitted). We will only reverse the agency if "the evidence not only supports a contrary conclusion, but compels it." *Id.*

Alshinbayev claims that the BIA's decision to deny him CAT relief was not supported by substantial evidence. He asserts that the BIA and IJ disregarded his testimony that his boss would collude with Kazakh officials to have him tortured in prison as well as his fear that he would not be generally safe in a government prison.

"To qualify for relief under the CAT, an applicant . . . bears the burden of proving through objective evidence that 'it is more likely than not' that s/he would be 'tortured' in the country to which the applicant would be removed." *Obale v. Att'y Gen.*, 453 F.3d 151, 161 (3d Cir. 2006) (quoting *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004)). This is a two-step inquiry: first, the agency asks "what is likely to happen to the petitioner if removed," and then it decides whether "what is likely to happen amount[s] to the legal definition of torture." *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (citation omitted). The first question is primarily factual, while the second is legal. *Id.* "Generally, an agency is required to consider all evidence relevant to the possibility of future torture, but the IJ and BIA need not discuss every piece of evidence mentioned by an asylum applicant." *Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019) (internal citations and quotation marks omitted).

The IJ cited substantial evidence to support its finding that Alshinbayev had not shown it was more likely than not he would be tortured. It noted the lawful and commensurate sanctions imposed on both Smogulov and Alshinbayev's brother Yerman for their fraudulent conduct as evidence that Alshinbayev would be treated fairly if he was returned to and tried in Kazakhstan. Although the IJ did not explicitly acknowledge Alshinbayev's fear that Smogulov would pay others to torture or kill him in prison, Alshinbayev did not present any evidence supporting his fears that Smogulov would or could undertake those actions. This is not a case where expert testimony and documents in the record supporting the petitioner's fears were clearly ignored. *See e.g.*, *Quinteros*, 945 F.3d at 787 ("But the Board made no mention of the practice that Quinteros, Dr. Boerman, and the Harvard study discussed."). Thus we see no error.

In addition, Alshinbayev's fears of harsh prison conditions and the possibility of rape are unintended consequences of the legal sanctions he is likely to face, and thus "not the type of proscribed purpose contemplated by the CAT." *Pierre v. Att'y Gen.*, 528 F.3d 180, 189 (3d Cir. 2008) (*en banc*). To succeed on these claims, he would have to show that "petitioners with certain histories, characteristics, or medical conditions are more likely to be targeted." *Id.* at 188 (citation omitted). The record contains no such evidence. Accordingly, the IJ's determination—that Alshinbayev was "unable to establish that what would happen to him . . . would be anything other than a lawful criminal case held against him"—was supported by substantial evidence, and thus not an error. A.R. 92.

\* \* \* \* \*

6

For these reasons, we deny Alshinbayev's petition for review.